RECEIVED
IN CLERK'S OFFICE
MAY 13 2016
U.S. DISTRICT COURT
MID. DIST. TENN.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION
AT COLUMBIA

| | |
|---|---|
| Gai Kuot, | ) Case No. 1:16-cv-00006 |
|     Plaintiff, | ) Senior Judge K.H.Sharp/Knowles |
| vs. | ) Jury Demand |
| John Doe Medical Contractor, et al | ) |
|     Defendant(s). | ) |

## MEMORANDUM OF LAW IN SUPPORT OF SUPPLEMANTAL MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

(1)    **COMES NOW** the Plaintiff, Gai Kuot, TDOC #507979 *pro se,* pursuant to the **Federal Rules of Civil Procedure, Rule 65,** and respectfully requests that this Honorable Court grant him a **Temporary Restraining Order and/or Preliminary Injunction** in the case sub judicie.

**STATEMENT OF THE CASE:**

(2)    Plaintiff has filed a compliant pursuant to **42 U.S.C. § 1983** for the violation of his civil rights, caused by the herein named defendants acting under the color of state law. (see Original **42 U.S.C. § 1983** Complaint, contemporaneously filed herewith February 2nd, 2016)

(3)    Plaintiff has also filed an amended compliant on May 5th, 2016.

(4)    Defendant's were served a copy of the complaint on April 15th, 2015.

(5)    For the last several years, the Defendant's have been well aware of the conditions which the instant TRO seeks to enjoin, and the irreparably harmful actions committed by the defendants that Plaintiff seeks to restrain.

(6)    The defendants have been served a copy the the pleadings relevant to the instant TRO request.

1

(7) Plaintiff has required with the mandatory notice requirement of Fed. R.Civ. Proc. 65(b)(1)

(8) However, even in the absence of such notice, this court should and could issue the TRO and preliminary Injunction because "....specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss or damage will result to the movant before the adverse party can be heard in opposition...".

(9) Furthermore, in the absence of such notice, this court should and could issue the TRO and preliminary Injunction because, Plaintiff has certified, his efforts to give notice..."

(10) In the said compliant plaintiff has alleged, *inter alia*, that:

    b.) Due to the dangerous and uncontrolled conditions, Defendants allowed violent gangs and Security threat group organizations to control whole units and tiers in the housing units, which resulted in Plaintiff being violently assaulted and seriously injured, in direct violation of his 8th Amend U.S.Const. Rights against cruel and Unusual punishment.

    c.) Due to the willful and intentional acts of Defendants to save money, stream line operations, and achieve political ends of appearing tough on crime-the Defendant's created dangerous and uncontrolled conditions wherein Plaintiff was subjected to a-substantial and ever present-pervasive risk of serious harm in direct violation of his 8th Amend U.S.Const. Rights against cruel and Unusual punishment.

    d.) Due to the willful and intentional acts of Defendants to save money, stream line operations, and achieve political ends of appearing tough on crime-the Defendant's created dangerous and uncontrolled conditions wherein Plaintiff was violently assaulted and seriously injured, in direct violation of his 8th Amend U.S. Const. Rights against cruel and Unusual punishment.

    l.) Due to the willful and intentional acts of the Defendants to save money and stream line operations the Defendant's willfully and intentionally denied Plaintiff necessary treatment for his chronic medical condition; to wit: *Hepatitis B*, in direct violation of his 8th Amend U.S. Const. Rights against cruel and Unusual punishment.

    m.) Due to the willful and intentional acts of the Defendants to save money and stream line operations the Defendant's willfully and intentionally denied Plaintiff necessary treatment for his chronic medical condition; to wit: *Gastrointestinal Bacterial infection* in direct violation of his 8th Amend U.S. Const. Rights against cruel and Unusual punishment.

    n.) Due to the malicious and harmful intent of the Defendants to induce a harsh and punitive prison environment, *plaintiff and other inmates in the*

<u>*TDOC are subject to "artificially created adversity", wherein they suffer a psychologically debilitating regime of forced idleness and dangerous overcrowding*</u> in direct violation of his 8th Amend U.S.Const. Rights against cruel and Unusual punishment.

**STATEMENT OF FACTS:**

(11) The plaintiff seeks a Temporary Restraining Order and/or Preliminary Injunction to ensure that he is reclassified and transferred to <u>*Deberry Special Needs Facility* in Nashville Tennessee, so that he can receive proper treatment for his *Hepatitis B infection,* and *Gastrointestinal Bacterial infection.*</u>

(12) The plaintiff also seeks a Temporary Restraining Order and/or Preliminary Injunction to ensure that the Defendants do not purposefully destroy irrefutable and direct evidence of their actions; to wit: <u>willfully and intentionally allowing violent gangs and Security threat group organizations to control whole units and tiers in the housing units, which, in turn subjects Plaintiff to a-substantial and ever present-pervasive risk of serious harm in direct violation of his 8th Amend U.S.Const. Rights against cruel and Unusual punishment.</u>

## Immediate transfer to Special Needs:

(13) John Doe Medical Health Services, (real name unknown at current time) was and still is the contractual health care provider and employer of Defendants Dr. John Doe #1 and 2, as well as Administrative Health directors John Doe #1 and #2, and Health Administrator Jane Doe #1, who are several of the named Defendant's in the Plaintiff's civil rights suit. (see Claims (j)(k) & (l), *42 U.S.C. § 1983 Complaint,* filed February 2nd, 2016)

(14) John Doe Medical Health Services, for no reason other then budgetary concerns and seeking higher profits, knowingly, intentionally, and willfully ordered Defendants Dr. John Doe #1 and 2, as well as Administrative Health directors John Doe #1 and #2, and Health Administrator Jane Doe #1, to refuse to provide any and all of the critical and necessary treatments and medication that Plaintiff Kuot needs to address his chronic medical condition.

3

(15) Defendant John Doe Medical Health Services, did this knowingly and intentionally, while being fully aware of the fact that their decision to order said defendants to refuse Plaintiff Kuot's medical care and necessary therapeutic treatments, would cause the wanton infliction of unnecessary pain and suffering.

(16) Defendant John Doe Medical Health Services, Dr. John Doe #1 and 2, as well as Administrative Health directors John Doe #1 and #2, and Health Administrator Jane Doe #1, was and continues to be aware, as well, that the Plaintiff suffered sever injuries to his head, face and back, in addition to his *Hepatitis B infection,* and *Gastrointestinal Bacterial infection., all* required therapeutic treatments and prescription strength pain medication.

(17) In light of their employer's express desires Dr. John Doe #1 and 2, have completely and totally refused to provide any of the critical therapeutic treatment that Plaintiff desperately needs.

(18) Plaintiff is continuing to experience sever pain and suffering, and risks becoming permanently disabled as a result of his extensive injuries.(see **Attached** *Declaration in Support*; p. 2 ,¶ ¶'s 8-18; **filed February 2nd, 2016**)

(19) Thus, Plaintiff prays that this Honorable Court order his immediate transfer to *Deberry Special Needs Facility* in Nashville Tennessee so that he can receive proper and adequate medical treatment for his serious medical conditions, before he becomes permanently disabled.

### Preservation of evidence:

(20) Defendant's have a video surveillance system whereby all of the Housing Units at South South Central Correctional complex, are continually monitored by a CC television network, that records 24 hours a day.

(21) The video footage is only stored for thirty (30) days, after which time the footage and recordings are destroyed (i.e. recorded over)

(22) Plaintiff avers that this video footage would prove irrefutably that the direct actions of the defendant's in the instant case, are responsible for the injuries that he received. (see

4

Attached *Declaration in Support*; pp. 2,3 ,¶ ¶'s 15-27; filed October 5th, 2015)

(23) Therefore, Plaintiff wants this Honorable Court to enjoin the defendant's from destroying any of the video footage recorded in the Housing units from the filing of the instant motion, henceforth.

**STATEMENT OF FACTS:**

(24) Plaintiff avers that for all relevant times and events in the case at bar, he is and has been an inmate detained at South Central Correctional complex, located at 555 Forrest Ave., P.O.Box 279, Clifton Tennessee 38425. (hereinafter referred to as S.C.C.F.)

(25) Plaintiff, who is a 39 year old African Foreign National from South Sudan, is physically small in both his height and weight, (i.e. he is 5'3" and weighs less than 150 lbs.)

(26) Plaintiff is not affiliated with any STG or gang.

(27) Plaintiff, who already has deteriorating health, was placed into a unit with a gang affiliation rate of well in excess of 80%. (i.e. Out of the 128 [one hundred and twenty eight inmates, over 104 of them were confirmed and or suspected members of inmate Security threat groups].

<u>*SHOWER ESCORTS AND BREAKING SECURITY:*</u>

(28) The procedure for the showers, is quite simple, and uniform throughout the gang infested prisons in the State of Tennessee. (see Claims (a)-(i), *42 U.S.C. § 1983, Complaint,* filed February 2nd, 2016)

(29) Inmates, of lets say the Bloods, will holler out something like "showers" or "Blood Game", and at which time up to 12 to 15 inmates will strategically post them selves on the tiers/cat walk, so as to provide a cordon of security for an inmate going to the showers.

(30) During this time, only inmates who belong to that particular S.T.G organization (ie in this case the Bloods) are allowed to in any way approach, intercept or come close to this particular inmate going to the showers.

(31) If at any time Plaintiff or any other non-blood affiliated inmate approaches either the inmate going to the showers or his path to the showers, this is considered to be "breaking

5

security" (i.e. breaching the security protocols that the gang members have established her at S.C.C.F as well as throughout the State of Tennessee. )

(32) This in effect means that STG affiliated inmates have the unencumbered right to literally take over substantial portions of the housing unit, (i.e whole tiers and staircases; and the shower units, ice machine, and exit and entrance to the very housing unit itself, as well as to the individuals cells/cell doors to enter the cells,) and forcing Plaintiff Kuot to have to be subject to the control and dominion of other inmates.

(33) Defendant's have purposefully and intentionally failed to act reasonably by ensuring that the above disciplinary measures and State laws were enforced, so as to prevent literally hundreds of inmates in Plaintiff's hosing unit from openly, blatantly and wantonly engaging in STG activities such as escorting to the showers, and forcing Plaintiff Kuot to have to be subject to the control of dominion of other inmates which resulted in him being assaulted, extorted and terrorized.

*Video surveillance footage the Plaintiff seeks to enjoin the destruction of would clearly evince that the Defendant's not only have willfully chosen not to act reasonably in response to the well known pervasive risk of serious bodily and injury and assault that Plaintiff's is continually subjected to*

(34) Defendants have active, direct, timely and irrefutably detailed knowledge of the facts of pervasive gang activity, violence, threats and extortion; coupled with their flagrant and blatant disregard of the grave risk of injury to plaintiff while being held the Housing Units of Columbia Gemini, and Apollo at S.C.C.F

(35) Indeed here at South Central the Defendants all knew of and allowed this blatant escapade of perpetual STG activity to not only go on, but to flourish, until the point that it had become a de facto policy, enforced by staff members them selves.

(36) Indeed the Defendant's purposefully and intentionally allow inmates to escort one another to the showers and have gang meetings in their cells, and _basically take over portions of the housing unit for their own gang security reasons_.

(37) Plaintiff had the misfortune of breaking security, shortly after his arrival at S.C.C.F. during his assignment to S.C.C.F, and was violently assaulted and seriously injured on

6

numerous occasions. (see Claims (a)-(i), *42 U.S.C. § 1983, Complaint,* filed February 2nd, 2016)

(38) Plaintiff avers that the defendants had and still continue to have a de facto policy that governed every day life and housing unit protocols for plaintiff Kuot, <u>which mandated and required both the Staff and the inmates to absolutely ignore, disregard and violate these policies regarding the pervasive STG activity that was and tolerated.</u>

(39) Thus, Plaintiff avers that he can establish both Municipal and therefore, Corporate liability, under *Monell* either because a de facto policy or custom, promulgated by Correction Corporation of America, et al, which in effect required that they ignore, disregard and violate the written policies, in and of itself is "...<u>**a custom so pervasive that it became the de facto policy.**</u>" City of St. Louis v Praprotnik 485 U.S. 111, (1988)

(40) In other words, Plaintiff Kuot can establish corporate liability for Defendant Correction Corporation of America, et al., based on a custom, because their statements and actions prove irrefutably that the *de facto* policy was to ignore STG policy, and classification polices, produce fraudulent reports, and allow unfettered gang activity. Miller v. Shelby County 93 F. Supp. 2nd. 892 (Feb. 29th, 2000)

(41) Therefore, it did not matter that C.C.A and the TDOC had policies of both it's own internal creation and of the Tennessee Department of Correction, because not only did Defendants C.C.A. et al, ignore and refuse to implement or compel it's workers to comply with such policies, <u>it specifically required its on site local employees to **blatantly ignore, disregard and refuse to enforce them as well**</u>.

(42) Plaintiff must reiterate that this custom wasn't merely haphazard, unavoidable and accidental, and resulted because of *some perceived negligent disposition., Q*uite to the contrary, and more importantly this custom <u>**specifically required**</u> that the Defendants <u>**ignore, disregard and refuse to enforce the CCA and TDOC written policies and Tennessee State laws**</u>, and therefore, such a policy and *de facto* custom, was and still is willful, intentional, and knowing,.

(43) Once again every single one of these Defendants at any time of the day can and has

7

Case 1:16-cv-00006 Document 56 Filed 05/13/16 Page 7 of 10 PageID #: 444

<u>looked at their very own video monitors and noticed, observed, or directly seen in real time,</u> violent and coordinated STG affiliated inmate activity in the form of escorting, jamming doors, and removing commissary from inmates like plaintiff, and even assaults.

(44) Yet they willfully, voluntarily, knowingly, intentionally choose to not only allow this, but encourage it by continuing to condone and allow these inmates *carte blanche* to engage in these activities, in broad daylight and in direct violation of the paper policies.

(45) Plaintiff avers that this video footage would prove irrefutably that the direct actions of the defendant's in the instant case, are responsible for the injuries that he received.

(46) Therefore, Plaintiff wants this Honorable Court to enjoin the defendant's from destroying any of the video footage recorded in the Housing units from this filing of the instant motion.

## ARGUMENT POINT I
## THE PLAINTIFF IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

(47) In determining whether a party is entitled to a Temporary Restraining Order or a Preliminary Injunction, Courts generally consider several factors: whether the party will suffer irreparable injury, the "balance of hardships" between the parties, the likelihood of success on the merits, and the public interest. Each of these factors favors the grant of this Motion.

**A. The Plaintiff is Threatened with Irreparable Harm**

(48) The plaintiff alleges that he has been denied the protection of his Constitutional Rights in the form of violations of his 8th Amend U.S. Const. Rights against cruel and Unusual punishment, due to: (i) deliberate indifference to a serious medical need; and (ii) being subjected to a-substantial and ever present-pervasive risk of serious harm in direct violation of his 8th Amend U.S.Const. Rights against cruel and Unusual punishment.

(49) As a matter of law, the continuing deprivation of constitutional rights constitutes irreparable harm. Jolly v Coughlin, 76 F.3d 468 (1996)

(50) Furthermore, Plaintiff is threatened with irreparable harm because of the nature of his

injuries and the persistent threat of violent gang attacks, in addition to his chronic medical condition.

### B. The Balance of Hardships Favors the Plaintiff

(51) In deciding whether to grant TRO's and Preliminary Injunctions, court's ask whether the suffering of the moving party if the motion is denied will outweigh the suffering of the non-moving party if the motion is granted. *Mitchell v. Cuomo*, 748 F.2d 804, 808 (2d Cir. 1984); *Duran v. Anaya*, 642 F.Supp. 510 (D.N.M. 1986).

(52) In the case sub judicie, the pain and suffering of Plaintiff, combined with the permanence of his disfigurement; coupled with the pervasive risk of serious injury are enormous.

### C. The Plaintiff is Likely to Succeed on the Merits

(53) The Plaintiff has a great likelihood of success on the merits.

(54) Indeed Defendants have knowingly and intentionally violated Plaintiff's 8th Amend U.S. Const. Rights against cruel and Unusual punishment, by: (i) being deliberate indifferent to a serious medical need; and (ii) subjecting Plaintiff to a-substantial and ever present-pervasive risk of serious harm.

### D. The Relief Sought Will Serve the Public Interest

(55) In this case, the grant of relief will serve the public interest because it is always in the public interest for prison officials to obey the law, especially the Constitution. *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008); *Duran v. Anaya*, supra.

## POINT II:
## THE PLAINTIFF SHOULD NOT BE REQUIRED TO POST SECURITY

(56) Usually a litigant who obtains interim injunctive relief is asked to post security. Rule 65(c), Fed.R.Civ.P. However, the Plaintiff is an indigent prisoner and is unable to post security. The court has discretion to excuse an impoverished litigant from posting security. *Elliott v. Kiesewetter*, 98 F.3d 47, 60 (3d Cir. 1996); *Moltan Co. v. Eagle-Pitcher Industries, Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995).

## CONCLUSION

(57) **Wherefore the foregoing reasons,** Petitioner prays that this Honorable Court grant him

9

the relief he seeks in the instant Motion.

Respectfully submitted,

*Gai Kuot*

Gai Kuot, TDOC #507979
S.C.C.F.; P.O.Box # 279
Clifton Tenn, 38425

## CERTIFICATE OF SERVICE

I, Gai Kuot, TDOC #507979, do hereby swear and affirm that a copy of the foregoing document(s) have been forwarded to the following individual(s) via Pre-Paid First-Class United States Postage, and I further certify that I have placed these legal document(s) in the prison's mailing system on this the 6 th day of May , 2016.

James I Pentecost, #11640, Attorney for Defendants
Pentecost & Glenn, PLLC
106 StoneBridge Blvd.
Jackson Tenn., 383053

*Gai Kuot*

Gai Kuot, TDOC #507979
S.C.C.F.; P.O.Box # 279
Clifton Tenn, 38425

10