## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## COLUMBIA DIVISION

| | | |
|---|---|---|
| GAI KUOT, #507979, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-00006 |
| | ) | Judge Crenshaw / Frensley |
| CORRECTIONS CORPORATION OF | ) | |
| AMERICA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I.  Introduction and Background

This matter is before the Court upon two Motions to Dismiss Plaintiff's Amended Complaint: the first, filed by Defendants Schofield,[1] Woodall,[2] Parker, and Foster (collectively referred to as "TDOC Defendants") (Docket No. 139); and the second, filed by Defendants Lindamood, Buttram, Dodd, McClain, Inman,[3] Coble, Hacker, Corrections Corporation of America ("CCA"), Medlin, Hininger, Chapman, and Killingsworth (collectively referred to as "CoreCivic Defendants"[4]) (Docket No. 142).  Each Motion is accompanied by a supporting Memorandum of Law.  Docket Nos. 140, 143.

---

[1] Defendant Schofield is no longer the Commissioner of the Tennessee Department of Correction ("TDOC").

[2] Defendant Woodall passed away on August 4, 2017.  *See* Docket Nos. 151, 151-1.

[3] Although Hank Inman is not included within the style of Plaintiff's Amended Complaint nor is he named as a party in Plaintiff's listing of the parties, Mr. Inman is part of the CoreCivic Defendants' Motion to Dismiss.  *See* Docket Nos. 138, 142.

[4] Corrections Corporation of America is now known as CoreCivic, and will be referred to as such herein.

Plaintiff has filed a "Motion in Opposition to Defendant's [*sic*] TDOC et al" which states that it is in opposition to Docket No. 66.[5]  *See* Docket No. 144.  Plaintiff's "Motion in Opposition" also states that Plaintiff has "simultaneously filed a Memorandum of Law in Support of the instant Motion," which is apparently referring to Docket Nos. 145 and 146, both of which appear to be Plaintiff's response opposing the CoreCivic Defendants' Motion to Dismiss (Docket No. 142).  Although somewhat unclear, the undersigned will construe Plaintiff's submissions (Docket Nos. 144, 145, 146) to be responses in opposition to both the TDOC Defendants' and CoreCivic Defendants' Motions to Dismiss now before the Court.

Plaintiff, pro se and in forma pauperis, filed his 137 page Amended Complaint pursuant to 42 U.S.C. § 1983 and Tenn. Code Ann. § 28-3-104, alleging 128 federal claims and 29 state law claims.  Docket No. 138.  Plaintiff generally avers that Defendants have violated his Eighth Amendment rights and have additionally violated numerous state tort laws.  *Id.*  Plaintiff summarizes the allegations of his 137 page Amended Complaint as follows:  "Stripped to it's bare essential elements, [] Plaintiff's complaint alleges that: '. . . . . Between November 2012 - June 2016 Defendant Core Civic has implemented and enforced de facto policies which have created dangerous and uncontrolled conditions of confinement wherein Plaintiff was violently assaulted and seriously injured multiple times . . . ."  Docket Nos. 145, 146.

Plaintiff sues CCA (now CoreCivic), CCA President Damon Hininger, CCA Regional Director Jason Medlin, Former South Central Corrections Facility ("SCCF") Warden Arvil Butch

---

[5] Docket No. 66 has already been ruled upon.  Presently before the Court are Docket Nos. 139 and 142.

Chapman, SCCF Warden "Cheryl" Lindamood,[6] Former SCCF Zone 2 Unit Manager Benjamin Killingsworth, SCCF Zone 2 Unit Manager Katherine Buttram, SCCF Associate Warden Daniel Dodd, Former SCCF Deputy Warden Dan Deavers "and his estate", SCCF Chief of Security Christopher McClain, Former SCCF Zone 2 Unit Manager and "current" SCCF Assistant Chief of Security Mark Hacker, Former TDOC Commissioner Derrick Shofield, Former TDOC Deputy Commissioner Jason Woodall,[7] Former Assistant TDOC Commissioner and "current" TDOC Commissioner Tony Parker, TDOC Liasion Joel Foster, TDOC Contract Monitor Bryant Williams, SCCF Nurse "f/n/u" Rashti, SCCF Jane Doe Nurses 1 and 2, SCCF Physician and acting Health Administrator Robert Coble, and "John Doe Medical Health Services," employer of Dr. Coble, in their official and individual capacities. *Id.*

Plaintiff seeks the following relief: (1) "Immediately arrange for SCO (seniors) assigned as Zone Seniors to be able to make the necessary cell change/cell assignments when Plaintiff and other similarly situated inmates are in a situation wherein they are assigned to cells with inmates that engage in STG activity"; (2) "Immediately arrange for the rigid and consistent enforcement of procedures and policies which will ensure that the Plaintiff and all other likewise situated inmates are protected against Cruel and Unusual Punishment by offering zero tolerance for STG activity, proper segregation of inmates who engage in STG activity, and zero inter mixing policy of confirmed, suspected STG affiliated inmates and those inmates who are not"; (3) "Refrain from destroying any recorded video evidence of the pervasive STG activity in the Housing

_____

[6] Although Plaintiff sues "Cheryl" Lindamood, the undersigned notes that Cherry Lindamood is the current Warden of SCCF.

[7] As has been noted, Mr. Woodall passed away on August 4, 2017. *See* Docket Nos. 151, 151-1.

units"; (4) $100,000 in compensatory damages from each Defendant individually; (5) $250,000 in punitive damages from each Defendant individually; and (6) "any other relief as it may appear [he] is entitled to." *Id.*

TDOC Defendants filed the instant Motion to Dismiss Plaintiff's Amended Complaint and supporting Memorandum on February 13, 2017, arguing that Plaintiff's Amended Complaint should be dismissed because it is untimely, fails to comply with the pleading requirements of Fed. R. Civ. P. 8, and fails to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Docket Nos. 139, 140. Specifically, TDOC Defendants argue that Plaintiff's Amended Complaint is untimely because, on January 3, 2017, this Court ordered Plaintiff to file his Amended Complaint within 20 days, but, although Plaintiff signed the Certificate of Service on January 23, 2017, the postage stamp reflects that it was not mailed until February 2, 2017, after the passage of 20 days, such that it was not timely filed. Docket No. 140, p. 2, fn. 2. TDOC Defendants further argue that Plaintiff has failed to comply with this Court's Order (Docket No. 128) and with Fed. R. Civ. P. 8, both of which require Plaintiff to provide a short statement of facts for his claims as to each Defendant, because Plaintiff's Amended Complaint is 137 pages consists generally of the same lengthy allegations as were in his initial Complaint such that Defendants are unable to clearly identify and properly respond to Plaintiff's claims. *Id.* at 2. TDOC Defendants additionally argue that many of Plaintiff's allegations appear to be outside the one year statute of limitations such that they are time-barred and should be dismissed. *Id.*

TDOC Defendants also argue that Plaintiff's claims against them should be dismissed because his Amended Complaint fails to state a claim against them for which relief can be granted because: (1) state officials are not persons subject to suit under §1983; (2) Defendant

Schofield is no longer TDOC Commissioner; (3) the State, its agencies, and its officers sued in their official capacities have immunity under the Eleventh Amendment; (4) Plaintiff has failed to allege direct participation or personal involvement so as to be able to sustain his individual capacity claims against them; and (5) Plaintiff's requests for injunctive relief are not proper. *Id.* at 2-9.

Plaintiff responds that his Amended Complaint contains 128 individual federal constitutional claims and 29 state law claims that are "coherently organized in a way that allows each one to be either admitted or denied." Docket Nos. 144, 145. Plaintiff continues, "there are a total of 157 different claims, supported by 96 pages of factual averments contained in numbered paragraphs 29 through 463," and "a total of 334 numbered paragraphs (i.e. ¶¶'s 29 though 463), that contain the actual pertinent facts to support these 157 different U.S. Constitutional and State tort claims." Docket No. 145, p. 1-2. Plaintiff notes that the "statistics of the ratio of the numbered paragraphs to claims and other relevant statistics clearly show that the complaint properly comply's [*sic*] with the requirements of Fed. R. Civ. Proc., Rule 8(a)," because "the amended complaint is worded/structured in such a way that results in a ratio of 3 (three) individual claims for every (one) page of factual averments," and he argues, "if succinctly listing the factual basis of three different claims on a single double spaced sheet isn't concise, then Plaintiff doesn't know what is." *Id.* at 2 (emphasis original). Plaintiff continues, "the amended complaint is worded/structured in such a way that results in a ratio of **only 2 numbered paragraphs per individual claim,**" and "if succinctly listing 2 numbered paragraphs is [*sic*] support of a single claim isn't concise,, [*sic*] then Plaintiff doesn't know what is." *Id.* at 2-3 (emphasis original). Plaintiff asserts that the multiple numbered paragraphs in his Amended

5

Complaint are necessary under the heightened plausibility standards contained in *Iqbal*, but he maintains that his claims are "simple, concise, and direct" and he notes that there are, on average, only 3 numbered averments listed in support of each claim. *Id.* at 3-4. Plaintiff argues that if Defendants wanted a more specific explanation of each factual allegation, then they should have moved for a more definite statement. *Id.* at 4.

Plaintiff further responds that Defendants "can't have it both way's [*sic*]; they can't argue one [*sic*] the one hand, that Plaintiff's allegations are 'speculative' and 'conclusory'; - and then on the other hand argue that the complaint is too 'verbose' and 'prolix' because Plaintiff has provided copious **<u>specific well plead facts</u> in multiple numbered paragraphed averments** in the complaint in order to put those allegations in context and bolster their plausibility," as required under *Iqbal*. *Id.* at 5. Plaintiff asserts that his statements are affirmative statements of fact, not conclusions, and that as such, they are entitled to an "assumption of truth." *Id.* at 5-13.

CoreCivic Defendants filed the instant Motion to Dismiss Plaintiff's Amended Complaint and supporting Memorandum on February 27, 2017, arguing that Plaintiff's Amended Complaint should be dismissed because it fails to comply with the Court's Order directing Plaintiff to file his "superceding amended complaint with a short statement of the facts for his claims as to each defendant" (Docket No. 128) and the pleading requirements of Fed. R. Civ. P. 8, and further fails to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Docket Nos. 142, 143. Specifically, CoreCivic Defendants argue, "Rather than comply with the Court's explicit directions and despite being given a second bite of the apple with notice of the failures of his first Complaint, the Plaintiff filed his Amended Complaint which, once again, is in clear violation of Rules 8 and 12 of the Federal Rules of Civil Procedure." Docket No. 143, p. 2.

6

CoreCivic Defendants continue, "In fact, other than now claiming that the relevant timeline dates [are] from November of 2012 through the present; rather than November of 2012 through October of 2015, and minor reorganizations of his paragraphs, and the naming of the parties, for the most part, the Plaintiff's Amended Complaint mirrors his original Complaint and is in clear violation of this Court's orders. Therefore, the Court should dismiss this action." *Id.* at 3.

CoreCivic Defendants additionally argue that Plaintiff's Amended Complaint fails to state a claim against them for which relief can be granted because: (1) some of Plaintiff's claims are time-barred; (2) Plaintiff's official capacity claims against the individual Defendants are redundant because CCA is also a named Defendant in this matter and the individual Defendants stand in the shoes of CCA for purposes of official capacity liability under §1983; (3) Plaintiff's claims against CCA itself fail because Plaintiff's allegations concerning the existence of an official CCA policy, practice, or custom that caused him constitutional injury are conclusory and insufficient to state a claim against CCA under §1983; (4) Plaintiff's claims against Defendant Hininger are conclusory and fail to allege that Defendant Hininger had any personal involvement in any of the alleged constitutional deprivations, and §1983 does not permit the imposition of liability based upon respondeat superior; (5) Hank Inman is not a named Defendant in this action but Plaintiff attempts to assert a claim against him; however, Plaintiff's Amended Complaint does not contain sufficient factual allegations against Mr. Inman to state a claim against him; (6) "due to the incoherent, rambling, prolix nature of the Plaintiff's Amended Complaint, it is nearly impossible to decipher the specific factual allegations against each of the remaining CCA Defendants to determine whether the Plaintiff has alleged sufficient facts to demonstrate that each of them acted with deliberate indifference towards him. Because Plaintiff has failed to

allege specific facts, rather than legal conclusions, to demonstrate that each of the CCA Defendants acted with deliberate indifference, his Amended Complaint fails to demonstrate that his claims are plausible"; and (7) Plaintiff's Amended Complaint fails to allege any other conditions of confinement claims; he has failed to allege in anything more than a conclusory manner that any of the CoreCivic Defendants acted with deliberate indifference to his health or safety and he has failed to allege that he suffered any injury as a result of his conditions of confinement. *Id.* at 5-15.

CoreCivic Defendants further contend that the allegations of Plaintiff's Amended Complaint do not sufficiently state failure to train and/or insufficient staffing claims because they are conclusory and fail to allege facts tying the purported inadequate training and/or staffing to his alleged constitutional deprivation. *Id.* at 15-16. As for Plaintiff's denial of medical care claims, Plaintiff's Amended Complaint fails to sufficiently allege that Defendant Coble violated Plaintiff's constitutional rights, as several of Plaintiff's factual allegations against Defendant Coble were actually admissions by Plaintiff that Defendant Coble provided him with medical care. *Id.* at 16-17. Finally, CoreCivic Defendants maintain that this Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims or dismiss all of Plaintiff's state law claims for failing to state a claim upon which relief can be granted, for being time barred, and for being conclusory. *Id.* at 17-23.

Plaintiff responds that the CoreCivic Defendants have denied his allegations, thereby demonstrating that his allegations, "by definition," are "organized enough to be either admitted or denied." Docket No. 146. Plaintiff continues, "[D]efendants can't deny the truth of the factual averments **in their foot notes**, while being heard to complain that they can't understand

any of these **very same facts well enough to deny or admit their truthfulness in a responsive pleading**." *Id.* at 2 (emphasis original). Plaintiff reiterates his assertions that the Amended Complaint contains 128 individual federal constitutional claims and 29 state claims that are supported by 96 pages of factual averments set out in 334 numbered paragraphs (paragraphs 29 through 463), and that each numbered paragraph contains pertinent facts that are worded in such a way as to allow Defendants to either admit or deny their truthfulness. *Id.* at 3. Plaintiff argues that the Amended Complaint is structured in such a way that it averages 2 to 3 numbered paragraphs per individual claim, resulting in a ratio of 3 individual claims per page, with there being an average of 1.33 pages of pages of averments per each individually named Defendant. *Id.* at 3-5. Plaintiff argues that the factual allegations in support of his claims are "simple, concise, and direct," and that, if Defendants wanted a more specific explanation of each factual allegation, then they should have moved for a more definite statement. *Id.* at 5.

Plaintiff again responds that Defendants "can't have it both way's [*sic*]; they can't argue one [*sic*] the one hand, that Plaintiff's allegations are 'speculative' and 'conclusory'; - and then on the other hand argue that the complaint is too 'verbose' and 'prolix' because Plaintiff has provided copious **<u>specific well plead facts</u> in multiple numbered paragraphed averments** in the complaint in order to put those allegations in context and bolster their plausibility," as required under *Iqbal*. *Id.* at 6-7. Plaintiff asserts that his statements are affirmative statements of fact, not conclusions, and that as such, they are entitled to an "assumption of truth." *Id.* at 10-14.

For the reasons set forth below, the undersigned finds that Plaintiff's Amended Complaint fails to comply with the pleading requirements set forth in this Court's Order (Docket No. 128) and Fed. R. Civ. P. 8. The undersigned further finds that the allegations of Plaintiff's

9

Amended Complaint are conclusory and fail to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) against either the TDOC Defendants or the CoreCivic Defendants. The undersigned therefore recommends that Defendants' Motions to Dismiss Plaintiff's Amended Complaint (Docket Nos. 139, 142) be GRANTED, and that this Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

## II.  Facts

After noting that Plaintiff's original 145 page Complaint was "rambling, repetitive, and far-reaching," Judge Sharp, in his Memorandum Opinion issued March 22, 2016, thoroughly summarized the allegations of Plaintiff's Complaint. *See* Docket No. 7. Plaintiff's 137 page Amended Complaint essentially mirrors his original Complaint, and remains "rambling, repetitive, and far-reaching." *Compare* Docket No. 1 *with* Docket No. 138. Because Plaintiff's Amended Complaint generally reiterates the allegations of his original Complaint, and because Judge Sharp thoroughly summarized the allegations of Plaintiff's original Complaint, the undersigned incorporates by reference the factual summary set forth by Judge Sharp in his March 22, 2016 Memorandum Opinion and will not specifically restate the entirety of those allegations herein. Where relevant or necessary for a thorough legal analysis, or where the factual allegations of Plaintiff's Amended Complaint may differ from those of his original Complaint, the undersigned will include and discuss those allegations in the analysis below.

## III.  Law and Analysis

### A.  Fed. R. Civ. P. 8(a) and (d)

Fed. R. Civ. P. 8(a) and (d) set forth the requirements for a pleading that states a claim for relief as follows:

**(a) Claim for Relief.** A pleading that states a claim for relief must contain:

> **(1)** a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

> **(2)** a short and plain statement of the claim showing that the pleader is entitled to relief; and

> **(3)** a demand for the relief sought, which may include relief in the alternative or different types of relief.
> . . .

**(d) Pleading to Be Concise and Direct; Alternative Statements; Inconsistency.**

> **(1)** *In General.* Each allegation must be simple, concise, and direct. No technical form is required.

> **(2)** *Alternative Statements of a Claim or Defense.* A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

> **(3)** *Inconsistent Claims or Defenses.* A party may state as many separate claims or defenses as it has, regardless of consistency.

## B.  Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 12(b)(6) provides that a claim may be dismissed for failure to state a claim upon which relief can be granted.  In order to state a claim upon which relief can be granted, a complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory.  *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).  Conclusory allegations or legal conclusions masquerading as factual allegations will not

11

suffice.  *Id.*  A complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient.  *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face."  *Id*. At 1965, 1974.  *See also, Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

Moreover, the United States Supreme Court has recently addressed the appropriate standard that must be applied in considering a Motion to Dismiss for failure to state a claim.  *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  The *Iqbal* Court stated in part as follows:

> Two working principles underlie our decision in *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss . . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

556 U.S. at 678-79 (citations omitted).

## C.  42 U.S.C. § 1983

### 1.  Generally

Plaintiff alleges violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983.

12

*See* Docket No. 1.  Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978).  The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

### 2.  Individual Capacity Claims

42 U.S.C. § 1983 does not permit the imposition of liability based upon *respondeat superior*.  *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S. Ct. 445, 454, 70 L. Ed. 2d 509 (1981).  *See also, Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978); *Street v. Corrections Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996).

13

In order for a defendant to be held liable in his individual capacity, a plaintiff must demonstrate that that defendant personally condoned, encouraged, or participated in the conduct that allegedly violated his rights. *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (citations omitted). *See also, Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984) (*citing Hays v. Jefferson County,* 668 F. 2d 869, 872-874 (6th Cir. 1982) (The supervisor must have "at least implicitly authorized, approved or knowingly acquiesced in" the misconduct.) Conclusory allegations are not enough. *See Street,* 886 F.2d at 1479. *See also, Anderson,* 477 U.S. at 257; *Nix v. O'Malley,* 160 F.3d 343, 347 (6th Cir. 1998); *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990); *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir. 1990). Plaintiff must establish a "causal connection between the misconduct complained of and the official sued." *Dunn v. State of Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982).

### 3. Official Capacity Claims

In complaints alleging federal civil rights violations under § 1983, "[a]n official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents." *Claybrook v. Birchwell*, 199 F.3d 350, 355 n.4 (6th Cir. 2000) (*citing Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985)). *See also, Frost v. Hawkins County Bd. of Educ.*, 851 F.2d 822, 827 (6th Cir. 1988). As such, when a public employee is sued in his or her official capacity, the claims are essentially made against the public entity. *Id*.

Where an entity is named as a defendant, an official capacity claim against its individual employees is redundant, and those claims should be dismissed. *Foster v. Michigan*, 573 Fed.

Appx. 377, 390 (6th Cir. 2014); *Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322, 327 (6th Cir. 2013).

### a.  CCA (now CoreCivic)

CCA (now CoreCivic) is a private corporation that contracts with the State to operate the penal facility.  A private entity that contracts with the State to perform a traditional state function, such as operating a penal facility, acts under color of state law and may be sued under § 1983.  *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993); *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996).  Thus, CoreCivic is amenable to suit under § 1983.

The law is well-settled that respondeat superior does not provide a basis for liability under § 1983.  *See Bd. Of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 690-91 (1978); *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005).  In order for CoreCivic to be held liable, therefore, a plaintiff must plead allegations, *inter alia*, that an "official policy or custom was adopted by the official makers of policy with 'deliberate indifference' towards the constitutional rights of persons affected by the policy or custom."  *City of Canton v. Harris*, 489 U.S. 378, 387-88, 109 S. Ct. 1197, 1204, 103 L. Ed. 2d 41 (1989).  *See also, Monell*, 436 U.S. at 690-91 (In order to find a governmental entity liable, Plaintiff must establish that (1) he / she suffered a deprivation of a constitutionally protected interest, and (2) the deprivation was caused by an official policy, custom, or usage of the local governmental entity.).  In other words, a plaintiff must show that some official CoreCivic policy, practice, or custom was the moving force behind the alleged constitutional deprivation.  *See Monell*, 436 U.S. at 691; *Miller*, 408 F.3d at 813.

Additionally, CoreCivic cannot be held liable for the actions or inactions of its

supervisory officials simply as their employer unless a plaintiff can show that the supervisor either encouraged the specific incident of misconduct or had some direct, personal involvement in the alleged constitutional deprivation. *See, e.g., Knott*, 481 F.3d at 574; *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

### b. TDOC

When a plaintiff sues TDOC employees in their official capacities, the plaintiff's claims against them in their official capacities are claims against the state of Tennessee. 42 U.S.C. § 1983 authorizes the imposition of liability against every "person" who, acting under color of state law, violates another person's federally protected rights.[8] *See* 42 U.S.C. § 1983. The law is well-settled that a state is not a "person" within the meaning of § 1983. *See, e.g., Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989); *Clark v. Kentucky*, 229 F.Supp.2d 718, 722 (E.D. Ky. 2002).

### 4. Eighth Amendment

The Eighth Amendment provides that:

---

[8] 42 U.S.C. § 1983 specifically provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

16

> Excessive bail shall not be required, nor excessive fines imposed,
> nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The United States Supreme Court has held that the constitutional prohibition of "cruel and unusual punishments" forbids punishments that are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976) (citations omitted).

In order to establish an Eighth Amendment claim, an inmate must satisfy a two-prong test: (1) the deprivation alleged must be objectively serious; and (2) the official responsible for the deprivation must have exhibited deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994).

## D.  The Case at Bar

In an Order entered on January 3, 2017, Judge Sharp directed Plaintiff to file, within 20 days, a "superceding amended complaint with a short statement of the facts for his claims as to each defendant." Docket No. 128.  Plaintiff filed his 137 page Amended Complaint on February 3, 2017.  Docket No. 138.  Plaintiff argues that this Amended Complaint complies with Judge Sharp's Order, with Fed. R. Civ. P. 8, and with the *Iqbal* standards.  Docket Nos. 144, 145, 146.

The essence of Plaintiff's allegations are as follows.  Plaintiff alleges that he is in a constant state of heightened vulnerability due to his small physical stature, his lack of gang affiliation, and the language and culture barriers he faces as someone from South Sudan.  *Id.* Plaintiff argues that gang activity is "rampant and out of control" at SCCF, and he avers that

17

beginning in 2013, he has been repeatedly threatened, extorted, and assaulted by gang affiliated inmates. *Id.* He avers generally that he did not receive prompt medical attention after his assaults. *Id.* Plaintiff additionally argues that gang affiliated inmates basically "have the unencumbered right to literally take over substantial portions of the housing unit, (i.e. whole tiers and staircases; and the shower units, ice machine, and exit and entrance to the very housing unit itself, as well as to the individuals cells/cell doors to enter the cells,) and forc[e] Plaintiff Kuot to have to be subject to the control and dominion of other inmates." *Id.* Plaintiff maintains, "both the TDOC and C.C.A. were aware of and had active conscious knowledge that STG's were not only a real and present danger, but that they had to be addressed properly, in order to ensure the safety of Plaintiff Kuot and other inmates." *Id.* Plaintiff further maintains that Defendants "knew about and refused to enforce" TDOC policies that gang inmates routinely violated, allowed "freedom of movement" to occur "freely and with no restriction," and refused to "stop the wholesale participation of STG activity." *Id.*

As to the individual Defendants, Plaintiff avers that Defendants Medlin, Chapman, Lindamood, Buttram, Killingsworth, Dodd, Deavers, McClain, and Hacker had "first hand direct knowledge" of "Shower Escorts and Rampant STG activity in the housing Units" because they "witnessed them with [their] own eyes," but "intentionally allow[ed] this rampant gang activity" "to go on unchecked," and thereby "disregarded a grave risk of injury to Plaintiff." *Id.* Plaintiff argues that Defendants Chapman, Killingsworth, Dodd, McClain, and Buttram "failed to act reasonably by ensuring that STG inmates, who were easily confirmed and verifiable pursuant to **506.26(IV)(B) (4)(c)(d)(e)(f)(i)**, were prevented from openly, blatantly and wantonly engaging in STG activities such a escorting to the showers, and taking over substantial portions of the

18

housing unit, (i.e. whole tiers and staircases.) and forcing Plaintiff Kuot to have to be subject to the control of dominion of other inmates." *Id.* (emphasis original).

Plaintiff further avers that, over the years, he complained to Defendants Chapman, Killingsworth, Buttram, Lindamood, Deavers, Hacker, Dodd, and McClain about the gang activity, reported that gangs ran the institution, notified them that he had been assaulted and was in fear for his safety, and asked to be transferred either to another cell in "D pod or Enterprise," or to a lower level security institution such as the Wayne County Annex, DeBerry Special Needs Facility, or the over 50/Veteran's pod, where the gang policies are strictly enforced, but they would just laugh or make retorts, told him they could not transfer him, and did nothing to "stop the prevalent and rampant" gang activity. *Id.* Plaintiff contends that they "knowingly and intentionally" refused to enforce the gang and classification policies, and that their refusal to enforce these policies "allowed the pervasive gang activity" and facilitated the circumstances through which gangs could assault him. *Id.* Plaintiff maintains that he "has genuinely feared [gang] inmates, and the environment of out of control violence that has been created by lawlessness and *carte Blanche* and impunity of these inmates to engage in organized [gang] activity." *Id.*

Plaintiff also asserts that Defendants Chapman, Lindamood, Deavers, Buttram, McClain, and Dodd failed to properly train and supervise their subordinate staff, forced Plaintiff to walk with his hands behind his back in harsh weather conditions on unstable terrain, routinely and arbitrarily forced Plaintiff to stand at attention for inordinately long periods of time while being denied permission to use the bathroom, routinely and arbitrarily forced Plaintiff to choose between starving or remaining in the housing unit day room for hours at a time, and forced

Plaintiff to endure institutional overcrowding. *Id.* Plaintiff contends that Defendants Killingsworth and Inman likewise failed to properly train and supervise the staff, and Defendant Williams implemented a policy allowing him and his staff to randomly assign cells. *Id.*

Plaintiff additionally avers that, although CoreCivic and TDOC "had policies of both it's [*sic*] own internal creation and of the Tennessee Department of Correction," CoreCivic has a de facto policy or custom that it, through its staff, promulgates, which, in effect, requires staff to "ignore, disregard and violate written policies, laws, and statutes." *Id.* Plaintiff maintains that Defendants CoreCivic, Hininger, and Medlin "were directly responsible for providing the instructions and operating guidelines for Defendant's [*sic*] Chapman, Killingsworth, Dodd, McClain, and Buttram," who clearly stated that they were carrying out the express commands and operating guidelines of 'Central Office,' [i.e. Defendant C.C.A's Corporate Headquarters and the officials who governed its policies and operating procedures.]." *Id.* Plaintiff argues that Defendants CoreCivic, Medlin, and Hininger have "purposefully and intentionally allowed [their] subordinates at S.C.C.F. to enforce Defacto policies and customs which permit, encourage and facilitate Gang Shower Escorts and Rampant [gang] activity in the housing units at S.C.C.F.," thereby creating dangerous and uncontrolled conditions of confinement. *Id.* Plaintiff further avers that, "for several years between 2013-2016," Defendants CoreCivic, Hininger, and Medlin "implemented and enforced de facto policies" which "failed to provide [] adequate staffing conditions" and "allowed inadequately trained staff to operate S.C.C.F.," which resulted in overcrowding and staff "arbitrarily and randomly" assigning cells. *Id.*

As to the TDOC Defendants individually, Plaintiff avers that gang members were allowed to terrorize fellow inmates without fear of institutional or disciplinary consequences because

20

Defendants Schofield, Parker, and Woodall decided to: (1) "totally re-engineer and restructure the Tennessee Department of Corrections [*sic*]"; (2) "not report[] assaults as assaults, so as to hide the true level of violence in the TDOC"; (3) "reduce the majority of inmates on maximum security to medium and minimum security levels" "in order to save money and reduce budget costs"; (4) "create[] a militaristic environment wherein Plaintiff, along with other TDOC inmates, were made to suffer and feel anguish and misery"; (5) "abandon, and disregard both their own internal policies and the TDOC policies" regarding inmate classification, gang activities, and inmate incidents of violence; and (6) "operate their prisons despite a chronic level of under-staffing" in the face of inmate overcrowding. *Id.* (emphasis original). Plaintiff further avers that Defendants Schofield, Parker, and Woodall decided not to classify inmates as violent or assaultive or ensure that gang policies were enforced, and also asserts that they "produced, generated and implemented policies specifically designed to increase the level of pain, suffering, discomfort, agitation and misery that inmates in the TDOC experience." *Id.* Plaintiff avers that he wrote letters to Defendants Schofield, Parker, Woodall, Foster, and Williams informing them of the problems he was having with grievances, medical treatment, and gangs, to no avail. *Id.*

Plaintiff argues that Defendants Schofield, Parker, Woodall, Forester, and Williams are liable because they "placed [Plaintiff] in harms way" and "it was their job specifically to ensure that state inmates housed at S.C.C.F. were properly protected by properly trained S.C.C.F. staff, in compliance and accordance with TDOC policy and Tennessee State law" *Id.* Plaintiff additionally argues that Defendants CoreCivic, Hininger, Medlin, Schofield, Parker, Woodall, Foster, and Williams "failed to take adequate measures to ensure that Staff at S.C.C.F. were properly and adequately trained and supervised," and also failed to ensure that S.C.C.F. was

adequately staffed.  *Id.*  Plaintiff additionally argues that Defendants failed to offer and/or restricted rehabilitative programs which intentionally created a psychologically debilitating idleness that lead to increased aggression and suicidal feelings in violation of his constitutional rights and Tennessee statutes, and that was exacerbated by a general lack of supervision, behavior controls, and overcrowding.  *Id.*

As his evidence of the aforesaid, Plaintiff proffers, *inter alia*, news articles, web research, "investigative reports," and "testimony"/reports from various "TDOC official[s]," "State Correctional Officer[s]," former Officers and Wardens, State Representatives, and Governor Haslam.  *Id.*  Plaintiff maintains that Defendants knew of the gang violence permeating TDOC institutions because inmates, including Plaintiff, warned them, and because they could have looked at the institutional video feeds and/or the media and news reports on the subject.  *Id.*

Plaintiff additionally avers that he has Hepatitis B and C and that Defendants have refused to provide him medical attention and treatment for his chronic conditions.  *Id.*  Plaintiff maintains that he suffers from daily stomach pain, headaches, nausea, and vomiting, and that he "began filling out sick-call slip after sick-call slip in an attempt to get medical treatment" for his Hepatitis, lower back, spine, neck, and head pain, but no one would treat him.  *Id.*  Plaintiff also avers that he was treated by "several persons" including Defendant Coble, and that he reported to Defendant Rashti, Jane Doe Nurse #1, and Jane Doe Nurse #2 on several occasions after being treated to inform them that he was still in pain and needed medication and physical therapy; that he was told by Defendants Coble and Rashti that he would not receive treatment for his Hepatitis because it was too expensive and prevented by budget constraints; and that Defendant Rashti knew that he needed treatment but intentionally "thwart[ed]" his treatment by incorrectly

recording the reason for Plaintiff's visits to the clinic.  *Id.*  As far as medical treatment after his assaults, Plaintiff avers that he was taken to the clinic and treated after the July 2013 assault but no others.  *Id.*

As a preliminary matter, Plaintiff filed his original Complaint in this action on February 8, 2016.  *See* Docket No. 1.  As has been discussed above, there is a one year statute of limitations in § 1983 actions in Tennessee.  *See, e.g., Roberson v. Tenn.*, 399 F.3d 792, 794 (6th Cir. 2005).  Accordingly, Plaintiff's claims arising prior to February 8, 2015 are time-barred and should be dismissed.

Addressing Plaintiff's official capacity claims arising on or after February 8, 2015, Plaintiff cannot sustain his official capacity claims against the individual TDOC Defendants because they stand in the shoes of the State of Tennessee, and the law is well-settled that the State is not a "person" amenable to suit under § 1983.  Thus, Plaintiff's official capacity claims against the individual TDOC Defendants should be dismissed.

Turning to Plaintiff's official capacity claims against the individual CoreCivic Defendants, those claims are redundant, as those employees stand in the shoes of their employer, CoreCivic, and CoreCivic is itself a Defendant in this action.  Plaintiff's official capacity claims against the individual CoreCivic Defendants, therefore, should likewise be dismissed.

Regarding Plaintiff's claims against CoreCivic itself, Plaintiff's allegations that CoreCivic's lack of policy enforcement violated his constitutional rights are conclusory.  It is insufficient to simply aver in a conclusory manner that CoreCivic has policies, practices, or customs that violated his constitutional rights.

Considering next Plaintiff's individual capacity claims, as discussed above, in order for

Defendants to be held liable in their individual capacities, Plaintiff must demonstrate that each Defendant personally condoned, encouraged, or participated in the conduct that allegedly violated his rights; conclusory allegations are not enough. As has been demonstrated in the recitation of Plaintiff's averments above, Plaintiff's allegations are conclusory. Plaintiff has simply failed to demonstrate that each individual Defendant personally condoned, encouraged, or participated in the allegedly violative conduct. Absent the establishment of the causal connection between the misconduct complained of and the official sued, Plaintiff cannot sustain his claims.

Because the undersigned recommends that the instant Motions to Dismiss be granted, the undersigned further recommends that this Court should decline to exercise supplemental jurisdiction over Plaintiff's pendent state law claims; those claims should be dismissed without prejudice. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966).

## IV.  Conclusion

For the reasons discussed above, the undersigned finds that Plaintiff's Amended Complaint fails to comply with the pleading requirements set forth in this Court's Order (Docket No. 128) and Fed. R. Civ. P. 8. The undersigned further finds that the allegations of Plaintiff's Amended Complaint are conclusory and fail to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) against either the TDOC Defendants or the CoreCivic Defendants. The undersigned therefore recommends that Defendants' Motions to Dismiss Plaintiff's Amended Complaint (Docket Nos. 139, 142) be GRANTED, and that this Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

24

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

JEFFERY S. FRENSLEY
United States Magistrate Judge